(76 Hun, 15.)

### ARNOLD v. NORFOLK & NEW BRUNSWICK HOSIERY CO.

(Supreme Court, General Term, Second Department.    February 12, 1894.)

SALE—MISREPRESENTATIONS BY SELLER—MATTERS OF OPINION.
   On the sale of the use of a patent right, fraud cannot be predicated on a statement by the seller that he could make a faster machine, where the purchaser knew that no faster machine than the one exhibited to him had been made, such statement being merely an expression of opinion.

Appeal from special term, Kings county.

Action by Anna M. Arnold against the Norfolk & New Brunswick Hosiery Company to recover royalties alleged to be due to plaintiff for the use of certain patent rights. On April 10, 1882, plaintiff and defendant entered into a contract, by which plaintiff agreed to sell to defendant the use of certain patent rights, and defendant agreed to pay therefor royalties guarantied to amount to the average sum of $1,000 per month. There was a judgment in favor of the plaintiff, and defendant appeals. Affirmed.

The opinion of Mr. Justice CULLEN, delivered orally at special term, is as follows:

"Mr. Edmonds, I don't think your client is entitled to relief in this case. Now, take this in its broadest aspect, and just see. In the first place, you take the undisputed facts in this case. This man brought a seam to you.

Now, the court has seen what you have produced as a sample of a similar seam, and it appears to be conceded by everybody that it is an excellent seam. Now he is asked, 'Did you produce that by a machine?' 'Yes.' There is no fraud in that. He had made the machine. He gives it to you. That the machine that he produced before you would make the stitch is undisputed; because, anyway, the first thing you would ask a man is, 'if you have got a seam, let me see the machine which made it.' And so a boy in a store for two years would do. He brought this machine to you. Now, he didn't pretend that he had any other machine. These were the machines which had done that work. He gave them to you, and you had them for a year. Now, I can't believe—all your arguments to the contrary, Mr. Edmonds—that long before the expiration of that year your company was not fully aware of the defects as well as the advantages of that present machine. Yours was an old company. From the fact that they had been in business so long the court must assume that they were a fairly successful company, and to be fairly successful in these times of sharp competition means business run with heads and brains; and I must believe that your people had just as much wit about an application for an invention of this kind as you would if a man had come and offered to sell you some peculiar, new kind of wool to put in your garments. Of course, the court does not suppose that you had the technical knowledge of the sewing machines in your business, such as this man Arnold had; and, if he had deceived you on a thing connected with that, the court might and would have granted you relief. But that is not the case. The fact was this: We take the machine as you state it. There is a machine which produces a stitch which is as good a stitch as could be wanted. The trouble is that it won't produce that stitch quick enough to make it pay for you to do it. I won't go over the old argument. How slowly that ran you knew just as well as he did, from actual experience. You knew that anything he told you about what he could do in the future was matter merely of opinion, because he could not have had the practical knowledge. He had never made such a machine. I agree with you, if there were something mechanical, so apparent that any mechanic might have known it,—involving a question like the strength of iron, that a layman might be ignorant of,—he might have deceived you. But this was plainly nothing of that kind. He said that he could make them go faster, according to your account. Now, that could not be a fraud. It must only be a matter of expectation. You knew he never had made one, otherwise he would have given you the machine that went faster. It was simply a statement of what he hoped to do. He admits that. Now, you have that agreement for six months; that enables you to cut that off. You gave him a part of the profit. You chose to change that into this other agreement. Now, the court cannot believe it took 180— How many years was this to run?

"Mr. Edmonds: Seventeen years.

"The Court: At $12,000 a year?

"Mr. Edmonds: Yes.

"The Court: Well, it took over $200,000. Now, the court can't believe but that you used some wit, some business ability, about such a thing; and the fact must have been that, whatever the subsequent facts proved to be, you people must have believed that a machine of that kind was a thing which would turn out profitably. Whether it turned out profitably did not depend alone on the machine. It depended on how the market would take the product. Now, it has turned out that it has not been profitable, but what was the cause I do not know. That this plaintiff's husband could have made the representation that you set up in answer, that it would be commercially profitable, cannot be the fact. What would be commercially profitable would depend upon the trade. Now, this machine has been made, and you have abandoned it. What the reason is does not appear. You say that it is because it would not do any of the work. The court cannot believe that that is the only reason, because, after you had had that for a year, when you had had this optional agreement for six months, you never would have taken the risk of tying yourselves up unless you had believed at that time that those goods would pay. Now, it has turned out the same way as with other people who make speculations and fail on them, who have judgment. It has turned out that you cannot make the goods on that, or that the goods you make don't

give you sufficient price, compared to other goods, to make a profit. Whether it is that the market don't take them, and you were mistaken in your judgment when you thought you had such a good thing, I cannot tell. I am very clear it did not come from the defect of the machine. And the same way as the court has already told you, if you have those eighty machines, if they were running for six or eight months, you would have sent those back, and your correspondence would be filled with the upbraiding of that man for sending a machine which had been defective. And yet you took them. Now, I can believe that you have got there the machine which you supposed at the time was going to be a good and profitable machine, and that he made some representations about it. I have no doubt that he said it was a good thing; that it was the best invention made, and would revolutionize the trade; probably all those things, and more. The rule is plain that simple commendation does not constitute fraud. A dealer may puff his wares, though he must not lie about them. But I cannot see that there was any statement of fact, or any statement which could be construed as a statement of fact, even if it was a matter which could be termed opinion, if it was an existing thing, that he made at that time, which was false. I cannot believe that you ever relied on any statement about the conditions of that machine, and went and made this contract. I don't believe that he made even those promises that they should go so much faster, because, if he did, as I say, you would not have taken them when you knew that a machine of 300 was worth nothing. You would have said: 'Make me a machine of a 1,000, and then we will make the contract.' I don't believe that, also, because you would have sent the machines back.

"So much for the character of the machine. Now, you come to another set of facts, and that is as to the representations as to the state of his patent. Now, while a man may puff his goods, a man must not tell falsehoods to induce others to buy them. But did this man tell a falsehood? Did you act on it? Did you rely on it? If I found he had told material falsehoods, it would not take very much evidence to make me believe that you acted on it, for I am not in favor of fraud in these times. But did he? Now, this agreement was very loosely drawn. He does not bind himself to get any particular patents. It is quite evident, though, and I find the fact, that it did relate to this anchor stitch. He talked with Mr. Letsen. This letter is produced. I think it is clear as anything can be, from the tone and character of that letter, Mr. Edmonds, that that letter was not meant to be shown to a board of directors; that that was the very letter that a man would write in the ordinary course. It would be very likely, if he intended it for the board, that he would commence: 'Mr. Letsen: For the sake of your directors, whom it is to be put before, my proposition is stated.' Now, look at that letter. If this was to the board of directors— The very terms of the agreement are not agreed upon. He says: 'Now it is your turn to suggest amendments.' You have not fixed on the terms of the agreement. So with the whole context of that letter. Unless you imagine a man with ingenuity and genius which would be marvelous, having preconceived this scheme of fraud from the beginning, and therefore written a letter not to look like it, that letter was never written to be shown to a directors' meeting at all. Now, Mr. Letsen and his men must have talked together very often about it. It is very evident, really, from this. It is plain that this gentleman, Mr. Carpenter, is not entirely memory-clear. His memory has been refreshed from time to time. He may be very wrong, and honestly wrong, on a transaction nine years ago. But when you come to set aside, on the ground of fraud, a contract that has been lived up to, the evidence ought to be plainer than it is. Now, I think this letter solely applies to the two-stitch patent, and not to the three, and there is nothing there to show that it was otherwise. If he wanted to put it to a board of directors, so that the board of directors would examine them, wouldn't this have put them right on their guard,—the opinion which he quoted? The fact was that the board of directors was Mr. Johnson Letsen. This thing was done by Mr. Johnson Letsen himself, and, if the board of directors had been active persons, one of them would have inquired: 'What does this mean? there may be a fight there?' Now, I cannot believe anything of the kind. I must believe that Mr. Johnson Letsen knew, from time to time, the condition of these patents. He lived till 1884. Until

that time he knew everything that this man had told and been told. If the machines were furnished in 1883, nothing had come out about the patents. But the fact is, as to how these machines were working, he was the man, at any time, to have put an end to that contract, and would have done it in his lifetime if this man had told him a falsehood.

"There is another thing. Your people don't think they are defrauded themselves. He gave an interest to Ashwell, who has been sitting here with them. If, as you have said (and I don't say it is not subject to that criticism), Arnold sought to interest him in the machine, and get you to take it, and you have been defrauded into a contract of nearly $200,000 or more, there is a man who you claim should have been loyal to you, who helps impose this fraud upon you, and yet you keep him there and pay him. If he were the best salesman in his department, you wouldn't have him. Now, this is an unfortunate speculation for this company, but it is not the only unfortunate speculation which people go into. One of your witnesses told the whole story as well as it could be told. He said: 'This is just like perpetual motion. People are always just about to get it.' It has proved an unfortunate speculation, but I find that there is no evidence of fraud here in this case. I should have preferred to have formulated many views in writing. But the time is so short that, as I have to go away, and I want to leave time enough for you gentlemen to present your request to find, I have preferred to do it at this stage."

Argued before DYKMAN and PRATT, JJ.

Walter D. Edmonds and John Hunter, Jr., for appellant.
Frank E. Blackwell, for respondent.

PRATT, J. The question of fact upon which this action depends was properly determined at special term. The opinion there delivered is fully sustained by the evidence. We have examined the numerous exceptions, and find none that require discussion. Judgment affirmed, with costs.